UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:24-CR-00143- RAJ-001 |
| Plaintiff, | |
| v. | DEFENSE SENTENCING MEMORANDUM |
| MICHAEL SAFFORD, | |
| Defendants. | |

## I.    INTRODUCTION.

The Defendant, Michael Safford, having pled to one count of Felon in Possession of a Firearm contrary to 18 U.S.C. sec. 922(g)(1), Submits this memorandum in order to provide information to assist this Court in fashioning a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. sec. 3553(a).

1

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

Attached to this memorandum are a letter of acceptance of responsibility from Mr. Safford, letters of support from friends and family, Mr. Safford's unarmed private security guard temporary registration card, A copy of Mr. Safford's ADR showing he has a valid license, the Defense Sentencing Memorandum from his previous case- cause number CR 18-131 RAJ, and a Personal History and Adverse Childhood Experience (ACE) score report prepared by Rick Cowan of Cowan Mitigation for his previous case. *See* Exhibit 1.

## II.     OFFENSE CONDUCT

The Pre-Sentence Report accurately reflects the offence conduct. Mr. Safford was located in a parked vehicle asleep in the driver's seat with door open and a handgun visible in his pants pocket. He was polite and respectful to the officers. The current offense does not allege any attempt by Mr. Safford to use or threaten to use the firearm against another.

## III.    CHILDHOOD HISTORY

Mr. Safford's childhood history has been very well laid out for the Court in the Pre-Sentence Report as well as in the attached Sentencing Memorandum from

2

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

cause number CR 18-131 RAJ, and his ACE's report.

## IV.    **CURRENT CIRCUMSTANCES**

Mr. Safford is currently married to Shanease Stafford.  Although they were recently married in July of this year, they have known each other for over a decade and have been in a relationship for the past year and a half.  His wife lives in Seattle, has never had a criminal conviction, and is gainfully employed at Seattle's Children Hospital as a dental assistant.  She is also pursuing higher education to become a dental hygienist.  She is supportive of Mr. Safford and promotes a clean and sober lifestyle.

Since his release from federal custody, he has been present in his 3 daughter's life.  He has done "daddy and me" time with all three of his girls.  This includes attending cheerleading and drill team performances, weekend sleepovers, parent-teacher conferences, shopping trips, hair appointments, movies, college tours, and birthday parties.

His grandmother passed on September 9, 2023.  This had a very devastating effect on Mr. Safford.  His grandmother was his rock.  In his mother's letter to the Court, she calls Mr. Safford's grandmother his "second mother".  When he was

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

released from his prior sentence onto supervision he stepped into to very emotionally difficult situation. His grandmother was sick, his mother had just been diagnosed with cancer, is only sister was dying from kidney disease, and his now-wife's father had just been diagnosed with cancer. Mr. Safford was overwhelmed with the grief and fear he experienced with those he is so close to suffering. He was overwhelmed with the need and his desire for him to take care of his family. He took care of them by taking them to doctor's appointments and making sure they had food, medicine, and other items they needed.

Since being released from custody Mr. Safford did maintain a period of employment. The lengthiest was with Iron and Oaks as security. He obtained his security guard license. He also worked on and did obtain his driver's license.

## V.     MENTAL HEALTH FACTORS

Mr. Safford was diagnosed early in childhood with ADHD. In adulthood he was also diagnosed with anxiety and depression. He has never consistently taken medication for these diagnoses. The medications that he has previously taken have had debilitating side effects such as causing sedation and causing him to pull hair off his body. Mr. Safford realizes that failing to seriously address his mental health

4

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

concerns- both his diagnoses and his childhood trauma, has created an obstacle to his ability to remain clean and sober.  At this stage in his life, he wants to begin to confront these issues.  He would like to participate in mental health treatment.  He realizes that without addressing his mental health issues he can't achieve the sobriety that he so desperately wants.  He is willing to work with a doctor to find a medication that does not have such adverse side effects as the ones he has previously taken.   Mr. Safford sees that self-medicating with drugs and alcohol is just numbing him and keeping him on the same path that led him to where he is now.

## VI.    <u>SUBSTANCE USE</u>

It is not disputed that Mr. Safford has a substance use disorder. As noted in Mr. Cowan's ACE assessment report, Mr. Safford has been exposed to drugs and alcohol his entire life.  He has used controlled substances and alcohol from a very young age.  He grew up surrounded by people who used controlled substances and alcohol habitually.  Mr. Safford has used narcotics. Yet, his main problem is with alcohol and marijuana. He self-medicates and numbs himself with alcohol and marijuana.  It is this reliance that he struggled so much with.

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

Mr. Safford, although with some hiccups, did complete successfully the RDAP program. Unfortunately, the time that he went through that program COVID was affecting people's ability to work in groups. Because of that, Mr. Safford did not get the full benefit of that program. What is telling though is that RDAP noted that "his strengths included…open mindedness, honesty, and orientation to telling the truth". (PSR para. 106, pg. 19). During TDAP it was noted that he "has a strong commitment to his sobriety". (PSR para. 108, pg. 20). His prognosis went from guarded (RDAP) to fair (TDAP). TDAP noted that Mr. Safford needed to assess mental health to rule out co-occurring disorders. (PSR para. 108, pg. 20).

Mr. Safford began stumbling soon after he was placed on probation. Violation reports were filed, but he was never brought before the Court. Then with the departure of his assigned counselor, the "quality and continuity of his care was diminished". (PSR para. 110, pg. 20). He agreed to do inpatient but facing not being able to help his family and his active alcoholism and drug use, Mr. Safford made the wrong decision and absconded. His grandmother died a few months later, and Mr. Safford was just lost to his alcoholism and addiction.

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

## VII.  **CRIMINAL HISTORY**

The following is a succinct list of Mr. Safford's criminal convictions.

| *AGE* | *DATE OF COMMISSION* | *CHARGE* |
|---|---|---|
| 15 | 4/17/2000 | DRIVING WITHOUT  LICENSE |
| 15 | 12/08/2000 | CONT SUSBT VIOL (D) |
| 15 | 12/08/2000 | DRUG PARAPH USE |
| 15 | 12/08/2000 | TAKING MOTOR VEHICLE WITHOUT OWNER PERMISS. |
| 16 | 6/17/2001 | DWLS 2 |
| 16 | 7/6/2001 | CONT SUSBT VIOL (D) |
| 16 | 8/27/2001 | ASSAULT 4 |
| 17 | 1/21/2003 | DWLS 2 |
| 18 | 11/18/2003 | MAKING A FALSE STMT |
| 19 | 2/28/2004 | MISDEMEANOR ASSAULT |
| 19 | 10/18/2004 | CONT SUBST SOLICITATION |
| 19 | 12/05/2004 | DWLS 2 |
| 20 | 7/4/2005 | UPF 2 |
| 22 | 9/6/2007 | DWLS 1 |
| **23** | **11/29/2008** | **CONT SUBST (DOSA)** |
| 24 | 8/24/2011 | MISD ASSAULT |
| 24 | 11/03/2011 | 2 COUNTS VNCO |
| 26 | 5/30/2013 | DWLS 1 |
| **26** | **11/03/2013** | **DWLS 2** |
| **26** | **12/30/3013** | **DWLS 2 (amended from 1st)** |
| **33** | **6/6/2018** | **CONSP TO DELIVER A CONTROL SUBSTANCE** |

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

**VIII.**      **PLEA AGREEMENT/ SENTENCING GUIDELINES**

Mr. Safford agreed to waive his Constitutional rights and entered a plea of guilty to the offense of Unlawful Possession of a Firearm at a very early stage in the case.  The calculations as to offense level and criminal history were incorrectly presented to the defendant.  It was represented to Mr. Safford that he would be in criminal history category 3 with a base offense level of 20.  With the 3-point acceptance of responsibility deduction his standard sentencing range for an offense level of 17 and a criminal history score of 3 would have been 27-33.  Negotiations between defense and the government were based upon this range.  Although, that range was incorrectly calculated the government felt it encapsulated adequately the punishment for Mr. Safford's conduct and recommended the low end of the sentencing range which would have been 27 months and agreed that the defense was not limited on what they could ask for.

Once Mr. Safford was informed of the error in the calculation, he was presented with an opportunity to withdraw his plea since he had not been accurately informed.  Mr. Safford never considered taking that route. From the beginning he made it clear that he wanted to take responsibility for his actions.

Since the firearm that Mr. Safford possessed could hold 16 rounds it is

8

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

considered a large capacity magazine. The definition of large capacity magazine is more than 15. Had Mr. Safford's firearm been capable of 1 less bullet he would not have started at a base level 26. There is no sufficient explanation for the Court for this error. The defense agrees that the Pre-Sentence Report is accurate. Mr. Safford was informed of this and his options and has chosen to proceed to sentencing based on his plea.

As to Mr. Safford's criminal history score, again the Pre-Sentence Report is accurate. Mr. Safford has the following criminal history points:

| | | | |
|---|---|---|---|
| *1 point* | *DWLS 2* | **offense date-**<br>**Final date-** | **11/03/2013**<br>**9/01/2016** |
| *1 point* | *DWLS 2* | **offense date-**<br>**Final date-** | **12/30/2013**<br>**9/25/2014** |
| *3 points* | *UPWID* | **offense date-**<br>**Final date-** | **11/29/2008**<br>**4/13/2014** |
| *3 points* | *Conspiracy*<br>*Deliver CS* | **offense date**<br>**sentenced** | **6/6/2018**<br>**12/13/2019** |
| *1 point* | *Crim hx points more than seven and instant offense*<br>*Committed while under sentence.  USSG sec 4A1.1(e)* | | |

However, Mr. Safford was advised that the 2 points for the DWLS 2 and the 3 points for the 11/29/2008 would not be counted as points as they were outside the 10 year/ 15 year rule. That advice was based on the date of the offense and not the

9

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

date of being "under a sentence". Clearly, that advice was erroneous. Again, as that was brought to Mr. Safford's attention, as well as his option to withdraw his plea, Mr. Safford insisted on maintaining his guilty plea and proceeding to sentencing.

As outlined in the Pre-Sentence Report, the sentencing guidelines with a base offense level of 26 and a 3 point reduction for acceptance of responsibility and a criminal history score of 9 compute to a sentencing range of 70-87 months.

## IX.        DEFENSE SENTENCING POSITION

This case was negotiated with the government from the position that the government felt that a sentencing range of 27-33 months reflected an adequate sentence for the conduct of Mr. Safford, and the government even considered the low-end of that range to be an adequate punishment for his conduct. As the Base offense level was included in the Plea Agreement but the incorrectly criminal history score which was relied upon in negotiations was not contained in the Plea Agreement, the government has agreed to honor the base offense level of 20, but is seeking a sentence within the range of his correct criminal history category of IV. This range is 37-43 months.  Mr. Safford joins in this request.  Such a sentence

10

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

would be consistent with 18 U.S.C. sec 3553(a) in that it takes into account the nature of the offense, Mr. Safford's personal history and characteristics, promotes respect for the law, affords both general and specific deterrence and avoids unwarranted sentence disparity. Most importantly, such a sentence is sufficient but not greater than necessary to achieve the policy goals of federal sentencing.

A downward departure based on Overstated Criminal History pursuant to U.S.S.G. sec 4A1.3(b)(1) also supports such a sentence of 27.

### X.    U.S.S.G. sec 4A1.3(b)(1) DOWNWARD DEPARTURE

A downward departure is available under U.S.S.G. § 4A1.3(b)(1) "where reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1). See also United States v. Beckham, 968 F.2d 47, 54 (D.C. Cir. 1992).

The purpose of section 4A1.3 is to allow a district court to deviate from the otherwise applicable guideline range where a defendant's criminal history, likelihood of recidivism, or both differ significantly from the typical offender for whom the applicable criminal history category was formulated. In other words, a

11

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

district court may depart when a defendant's criminal past or likely criminal future removes the defendant from the heartland of the applicable criminal history category. <u>United States v. Collins</u>, 122 F.3d 1297, 1304 (10th Cir. 1997).

The Sentencing Commission adopted § 4A1.3 and explained that it was designed to "recognize that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur." <u>Id</u>. The PSR in Mr. Safford's case calculated a Criminal History Category of IV based on two prior DWLS 2 convictions, a Possession with Intent to Deliver conviction, and a Conspiracy to Distribute Controlled Substance conviction. As shown above, the DWLS 2 convictions, although were within the last 10 years, the actual conduct was outside of the 10 year period. The Unlawful Possession with Intent to Deliver is the same. The actual conduct occurred 16 years ago. However, because of supervision issues, the case was not closed until 10 years ago. While the criminal history calculation is technically correct, Mr. Safford's criminal history is not representative of someone who is in criminal history category IV.

Many courts have granted a downward departure based on an overstated criminal history score. In <u>United States v. Ellis</u>, 376 F. Supp. 2d 1177 (D. N.M. 2004), the District Court in New Mexico was faced with a similar situation as the

12

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

present case. There, the defendant was convicted of manufacturing counterfeit U.S. securities. The PSR assigned a criminal history category of IV based on the defendant's one felony drug distribution conviction and two misdemeanor traffic violations. The court found that the criminal history score "significantly over-represents the seriousness of the defendant's criminal history and the likelihood that she will commit other crimes" especially as the traffic violations had no relation to the instant offense, and she would have received no points for them if she had been able to pay the small fines. Further, they did not indicate any propensity to commit other crimes. Id. The court departed to a criminal history score of III. Id.

In United States v. Dickmann, 2007 WL 442397 (E.D. Wis. 2007), the defendant was charged with conspiracy to distribute more than 500 grams of cocaine. His role consisted primarily of running errands for members of the conspiracy, for which he was usually compensated with cocaine that he used himself. The district court held that the defendant's criminal history category of IV over-represented the seriousness of his criminal past, justifying a one-level downward departure under U.S.S.G. § 4A1.3(b)(1), where all of the previous convictions were clustered during a time when the defendant's drug use caused his life to "spiral out of control," and all of the prior convictions were for nonviolent

13

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

offenses involving drug possession and petty theft and were typical of an addict's attempt to get money to buy drugs.

In <u>United States v. Eisinger</u>, 321 F. Supp.2d 997 (E.D. Wis. 2004), the defendant was convicted of possession of ephedrine with intent to facilitate manufacture of methamphetamine. She had earlier convictions for minor shoplifting and for possession of drug paraphernalia and marijuana. Id. at 1006. The court held that a criminal history category of III significantly over-represented the seriousness of her criminal history and her likelihood of recidivism. Id. The court noted that this was "not the sheet of the usual occupant of category III," and that the defendant's criminal history did not reveal a propensity for dangerousness or a willingness to harm others, and represented a time when she was a drug addict. <u>Id</u>. The court departed horizontally to category II and imposed a sentence of three years probation including six months of home confinement. <u>Id</u>.

Other examples of a sentencing court granting a downward departure under § 4A1.3(b)(1) include: <u>United States v. Anderson</u>, 955 F. Supp. 935 (N.D. Ill. 1997) (downward departure granted under § 4A1.3(b)(1) where prior convictions for drunk driving and domestic battery, though serious, were "not as serious as many of the crimes that place other defendants in Category III," especially as no injuries

14

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

were caused in either case); <u>United States v. Wilkerson</u>, 183 F. Supp.2d 373, 381 (D. Mass. 2002) (defendant convicted of distributing crack cocaine granted departure from category III to II where he had no convictions for crimes of violence but mostly drug and motor vehicle offenses); <u>United States v. Wilkes</u>, 130 F. Supp.2d 222, 239-40 (D. Mass. 2001) (departing to category I where defendant, convicted on drug and money laundering charges, had only "two convictions for minor drug offenses" yet was placed in category III); <u>United States v. Hammond</u>, 37 F. Supp.2d 204, 205 (E.D.N.Y. 1999) (where defendant conspired to buy 15 grams of cocaine, court departed from category VI to III where defendant "had no history of violent behavior [and his] prior arrests resulted from minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics.").

As Mr. Safford's criminal history score is a 9 based upon the inclusion of the DWLS 2 convictions and the 2008 Unlawful Possession with Intent, Mr. Safford respectfully requests a downward departure from a Criminal History Score of IV to a criminal history score of II. A criminal history score of II would not factor in minor driving offenses and an offense that occurred 16 years ago. This would result

15

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

in a sentencing range of 51-63, based upon a base offense level of 26 with a 3 point reduction to 23 for acceptance of responsibility.

Mr. Safford also asks for a downward departure to a base offense level of 24. To start at a base offense level of 26 the firearm in question needs to be able to accept a large capacity magazine. A large capacity magazine is magazine that is capable of accepting more than 15 rounds of ammunition. The firearm in question was capable of accepting 16 rounds of ammunition. Since this was one bullet shy of not meeting the standards for an offense level of 26, Mr. Stafford asks for a downward departure to a base offense level of 24.

Should the Court deny any downward departure, Mr. Safford respectfully requests that the Court still consider these factors in its analysis under § 3553(a).

**XI.**        **18 U.S.C sec. 3553(a) FACTORS**

The United States Supreme Court restored a District Courts' ability to fashion a sentence tailored to the individual's circumstances of the case and the defendant by requiring Courts to consider factors other than the sentencing range prescribed by the United States Sentencing Guidelines. *See* <u>United States v. Booker</u>, 543 U.S. 220 (2005). 18 U.S.C. sec 3553 is the controlling sentencing law. *See* <u>Rita v. United States</u>, 549 U.S. 1105 (2007); <u>Gall v United States</u>, 552

16

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

U.S. 38 (2007).

Therefore, as this Court well knows, a sentence shall be imposed that is sufficient, but not greater than necessary, to comply with the following purposes:

The need for the sentence imposed to:

1. Reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

2. To afford adequate deterrence to criminal conduct;

3. To protect the public from further crimes of the defendant; and

4. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the particular sentence to be imposed, the Court shall consider-

1. The nature and circumstances of the offense and the history and characteristics of the defendant.

*18 U.S.C. sec. 3553(a)(1-2).*

The additional sections 3-7 of 18 U.S.C. sec. 3553(a) pertain to the following factors respectively- (3) the kinds of sentences available, (4) the kinds of sentences and ranges established in the sentencing guidelines, (5) any relevant policy statements issued by the sentencing commission, (6) the need to avoid unwarranted sentence disparities, and (7) the need to provide restitution to any

17

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

victim. *18 U.S.C. sec. 3553(a)(3-7).*

## Seriousness of the offense, just punishment, respect for the law

A sentence as requested by the government and defense adequately addresses these issues.  The current offense does not include any attempt by Mr. Safford to harm or threaten to harm members of our community.  However, his offense is not as minimal has just being intoxicated as he was in a vehicle with a gun.  A 37- month sentence is appropriate.  Such a sentence promotes respect for the law because it holds Mr. Safford to serious consequences.

## Adequate deterrence

A 37 months sentence is an adequate deterrence.  Mr. Safford desperately wants to be out in the community addressing his mental health and substance use issues.  He wants to practice his faith in his community church.  He wants to be there for his daughter's life events.  He wants to be a good husband.  Being incarcerated for 37 months will deter Mr. Safford from placing himself in this position again.

## Protect the public

This sentence will protect the public.  Mr. Safford will have the time to reflect and engage in services so that he will not repeat the same behavior.

18

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

### Provide Mr. Safford with needed treatment

Mr. Safford will take advantage of whatever opportunities that are available while incarcerated to address his substance use disorder and his mental health issues.

### Sentence disparities

A sentence with the guideline range would result in an unwarranted disparity. 18 U.S.C. sec. 3553(a)(6) directs the court avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. This analysis is admittedly not directly on point, as it is based on incorporated previous arguments in this memo made regarding sec 4a1.3 and sec 3553(a). The following are a few examples.

Jimmy Gene Miller, Jr. received 24 months consecutive to his probation violation sentence for a conviction of Felon in Possession of a Firearm. Mr. Miller had a criminal history category of 4 and a base offense level of 24. Mr. Miller had two previous convictions for Felon in Possession of a Firearm, and the circumstances indicated that Mr. Miller was in fact likely in possession of multiple firearms for that offense. Additionally, one of Mr. Miller's prior possession was for selling drugs while in possession of a firearm. CR 21-218 RAJ. *See* Exhibit 2.

19

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

Blake Kirvin received 24 months consecutive to his probation violation sentence for Felon in Possession of a Firearm.  Mr. Kirvin had a base offense level of 20 with a 3-point departure to 17 and a criminal history category IV with a range of 37 to 46 months.   The facts of Mr. Kirvin cases are very similar to Mr. Safford. He was found asleep in a running car with a firearm.  However, Mr. Kirvin had 4 previous convictions for unlawfully possessing a firearm. *See* Exhibit 2.

Davon Evans was charged with Felon in Possession of a firearm and Manufacturing Marijuana.  He received a sentence of 24 months.  Mr. Evans was a criminal history category 2 with an offense level of 17 and a range of 27-33 months.  He received a 24-month sentence.  However, Mr. Evans had spent 150 months incarcerated for solicitation of murder based on an incident with he had been accused of rape.  In the 2024 offense Mr. Evans had a marijuana grow of 350 plants. CR21-068 RSM. *See* Exhibit 2.

Jaquan Jackson was sentenced to 18 months for Unlawful Possession of a Firearm.   He had two prior Unlawful possession of a firearm convictions.  Mr. Jackson was in criminal history VI with an offense level of 17.  His range was 51-63 months.  CR22-037 RSL. *See* Exhibit 2.

Finally, Raqwon Slade received a 24 months sentence for Unlawful

20

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com

Possession of a Firearm.   His offense level was 13 and he was in criminal history category IV.  Mr. Slade had 2 prior convictions for Felon in possession.  CR18-307 JCC. *See* Exhibit 2.

Unlike Mr. Safford, the above cases are people who had multiple prior Felon in Possession convictions and/or prior conduct that was violent in nature.


**XII.**        <u>**CONCLUSION**</u>

Technically, Mr. Safford does not present as an individual who warrants a lenient sentence.  However, viewed from his complete life experience and actions, Mr. Safford is an individual worthy of an opportunity to prove to this Court that he desires and intends to live a life in compliance with the law.  He started in this world with many things against him.  At the young age of 15 he entered the criminal justice system and continues to remain in it to this day.  Although, he did have significant amounts of time in-between offenses, with the exception of minor driving offenses.  His criminal records is indicative of an individual living life with inadequate coping facilities and drug and alcohol issues.  It does not reflect the life of an individual who is criminal minded.

Yes, his record on probation wasn't good.  That was a time that he was

21

Defense Sentencing Memorandum                        Jeniece LaCross
                                                     Attorney at Law
                                                     904 Dwight Street
                                                     Port Orchard, Wa 98366
                                                     (360) 876-1879
                                                     jeniecelacross@gmail.com

presented with overwhelming emotional situations in his life and he made very wrong choices as it came to probation.  Maybe had been brought before the Court immediately, things would have been different.  We don't know. We do know though that during RDAP and TDAP it was noted that Mr. Safford is open-minded, honest, orientated towards truth-telling, and has a strong desire for sobriety.  Those are fundamental and imperative characteristics to achieving sobriety.  Addiction is a disease.  The cure doesn't always catch the first or second time around.

Mr. Safford asks this Court to impose a just punishment for his conduct.

RESPECTFULLY submitted this 15th day of December, 2024.


Jeniece LaCross, WSBA#28859
Attorney for Mr. Safford

22

Defense Sentencing Memorandum

Jeniece LaCross
Attorney at Law
904 Dwight Street
Port Orchard, Wa 98366
(360) 876-1879
jeniecelacross@gmail.com